**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1221

_____

THOMAS E. WOODS,
Appellant
v.

SUPERINTENDENT DAVID DIGUGLIELMO; ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA; DISTRICT ATTORNEY OF THE COUNTY OF
FAYETTE

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-08-cv-00121)
District Judge: Hon. Donetta W. Ambrose

_____

Submitted under Third Circuit LAR 34.1(a)
February 12, 2013

Before: HARDIMAN and ALDISERT, <u>Circuit Judges</u>, and STARK,[*] <u>District Judge</u>.

(Filed February 20, 2013)

_____

OPINION OF THE COURT

_____

_____

[*] Honorable Leonard P. Stark, Judge of the United States District Court for the District of
Delaware, sitting by designation.

ALDISERT, Circuit Judge.

Petitioner Thomas E. Woods was convicted in the Court of Common Pleas of Fayette County, Pennsylvania on one count of first degree murder and is currently serving a life sentence. He was unsuccessful in his direct appeal and also in state post-conviction proceedings at the trial and appellate levels. Thereafter he was unsuccessful in obtaining habeas relief in the United States District Court for the Western District of Pennsylvania. This Court granted in part Woods's request for a Certificate of Appealability, stating that:

> Jurists of reason could debate whether: the prosecutor's comments to the jury regarding [accomplice] Herbert Green's plea agreement "so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process[,]" Greer v. Miller, 483 U.S. 756, 765 (1987) (quotation marks and citation omitted); . . . whether the Trial Court's accomplice instruction violated Appellant's constitutional rights under Cool v. United States, 409 U.S. 100, 102-04 (1972); and whether trial counsel was constitutionally ineffective for failing to raise those issues . . . .

After reviewing the record and the parties' arguments, we conclude that the state court decision was neither "contrary to, [nor] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), nor was it reached "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Accordingly, we will affirm the District Court's order denying habeas relief.

Because the parties are familiar with the facts and prior proceedings of this case we will not reiterate them here.

I.

"[The Supreme] Court has recognized that prosecutorial misconduct may so infec[t] the trial with unfairness as to make the resulting conviction a denial of due

2

process." Greer, 483 U.S. at 765 (internal quotation marks and citation omitted). Woods argues that the prosecutor's use of accomplice Herbert Green's plea agreement in his closing argument did just that. Petitioner relies on the rules and facts of Bisaccia v. Att'y Gen. of N.J., 623 F.2d 307 (3d Cir. 1980), to support his contention. "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer, 483 U.S. at 765 (internal quotation marks and citation omitted). We are not persuaded that this occurred here.

In Bisaccia, this Court held that "the admission of the co-defendant's guilty plea, the failure of the trial judge to give cautionary instructions to the jury about this evidence and the prosecutor's comments on this evidence so exceeded the tolerable level of ordinary trial error as to amount to a denial of constitutional due process." 623 F.2d at 313. However, the facts of Bisaccia are different from the facts here. In Bisaccia, the prosecutor used a co-conspirator's testimony regarding his own guilty plea to establish that the defendant participated in a conspiracy. Id. at 308. Furthermore, the prosecutor's closing statement contained inflammatory remarks that the defendants were treating the jury like "a bunch of five year old children" by denying the crime ever happened, given the co-conspirator's guilty plea. Id. at 309. Here, the prosecutor referred to accomplice Green's nolo contendere plea[1] to third degree murder and his five to ten year term of imprisonment to impeach Green's own trial testimony, which was inconsistent with and less incriminating than the prior statement that he had given to the police officer as part of his plea agreement. The prosecutor here did not use inflammatory remarks as did the prosecutor in Bisaccia, and did not use the plea agreement as substantive proof that Woods killed the victim, but rather to impeach Green's credibility. Even if we agreed that

---

[1] The prosecutor misspoke and said that Herbert Green "pled guilty" rather than "no contest," App. 720, but this does not affect our analysis.

3

the prosecutor's actions constituted misconduct, we nevertheless would not conclude that the alleged misconduct "so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process." See Greer, 483 U.S. at 765.

II.

In Cool v. United States, 409 U.S. 100 (1972), the Supreme Court held that accomplice instructions that predicate *consideration* of exculpatory accomplice testimony on finding that testimony to be true beyond a reasonable doubt violate a defendant's Sixth Amendment and due process rights. Id. at 102-104. Woods argues, relying on the facts of Cool, that the trial judge's accomplice instructions violated his rights under the teachings of Cool. We disagree.

In Cool the accomplice, called by the defendant, provided completely exculpatory testimony, "freely admit[ing] his own guilt, but steadfastly insist[ing] that neither petitioner nor her husband had anything to do with the crime." Id. at 101. The trial judge then provided the jury with the following instruction regarding the accomplice's testimony: "If the testimony carries conviction and you are convinced it is true *beyond a reasonable doubt* . . . it is your duty [] not to throw this testimony out because it comes from a tainted source." Id. at 102 (emphasis added in original). The Supreme Court concluded that this instruction violated the defendant's Sixth Amendment right because it infringed upon the defendant's right to present exculpatory accomplice testimony, and violated due process because given that the defendant's case depended almost entirely on the accomplice's testimony, the instruction required the *defendant* to establish his *innocence* beyond a reasonable doubt, lowering the Government's burden. Id. at 104.

Here, Green clearly implicated Woods by testifying that the victim "got shot while he was engaging with a fight with Woods. Woods had to got his hand, got it away long

4

enough to take a shot into the man's neck." App. 633. Woods contends, however, that this testimony was exculpatory as to first degree murder, even if it was inculpatory as to Woods's commission of a crime. In support of this position, Woods quotes Cool, which states that "even if it is assumed that [the accomplice's] testimony was to some extent inculpatory, the instruction was still fundamentally unfair in that it told the jury that it could convict solely on the basis of accomplice testimony without telling it that it could acquit on this basis." Cool, 409 U.S. at 103 n.4. Undoubtedly, a standard accomplice instruction may be confusing when, as here, accomplice testimony is exculpatory as to one count and inculpatory as to another. Nevertheless, we do not believe that the trial judge's instruction was a constitutional error, because, as a whole, Green's testimony was far more inculpatory than the testimony in Cool, which the Court stated it was willing to *assume* was inculpatory. Id.

Additionally, the instruction in Cool suggested to the jury that it was not to *consider* the accomplice's testimony unless it found it to be true beyond a reasonable doubt. Id. at 104. Here, however, the jury instruction merely stated that accomplice testimony should be viewed with "disfavor" and that if there was no independent evidence to support an accomplice's testimony, the jury could "still find [Woods] guilty solely on the basis of [the accomplice's] testimony, if . . . [it was] satisfied beyond a reasonable doubt that the accomplice testified truthfully and that [Woods] is guilty." App. 733. Accordingly, unlike in Cool, nothing in the instruction here suggested to the jury that it was not to *consider* the *exculpatory* elements of Green's testimony without first finding such testimony to be true beyond a reasonable doubt. Lastly, even if we agreed with Woods that the instruction was in error, we would not conclude that the error "had

5

substantial and injurious effect or influence in determining the jury's verdict." See Fry v. Pliler, 551 U.S. 112, 116 (2007) (internal quotation marks and citation omitted).

III.

Woods argues his trial counsel was constitutionally ineffective for failing to raise the issues above, such that his Sixth Amendment right to counsel was violated. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated a two-part test for determining whether counsel was constitutionally ineffective. First, the defendant must show that "trial counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. We have said: "It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (internal quotation marks and citation omitted). Second, the defendant must prove prejudice, or "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-694.

Woods cannot meet the requirements of Strickland for ineffective assistance of counsel. For the reasons stated above, trial counsel's representation did not fall below an objective standard of reasonableness. Neither the prosecutor's statements regarding Green's testimony nor the trial judge's accomplice instructions violated Woods's constitutional rights, and accordingly trial counsel's failure to object does not fall "outside the wide range of professionally competent assistance." Id. at 690. Moreover, Woods cannot demonstrate prejudice, as he cannot show that but for these alleged errors, the trial's result would have been different.

* * * * *

6

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.